USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                   :
PATRICK JAMES,                                  :

                       Plaintiff,          :            1:14-cv-1767-GHW

            -against-                    :           MEMORANDUM OPINION
OFFICER BROWN; CAPTAIN LEVY        :                AND ORDER
(SECURITY); DOCTOR JEANTY FRANCOIS, :

                    Defendants.      :
------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

      Plaintiff Patrick James is a pretrial detainee at Rikers Island who, prior to his arrest, was diagnosed with hyperthyroidism and prescribed daily medication to treat the condition. Mr. James, proceeding *pro se*, claims that he received constitutionally inadequate medical care based on a delay in receiving thyroid medication after his arrest and transfer to Rikers Island. Specifically, Mr. James alleges that Defendants Captain David Levy and Officer Maurice Brown failed to arrange an immediate medical examination for him, forcing Mr. James to wait for up to two days for an initial medical examination. Mr. James also alleges that Physician Assistant ("P.A.") Francois Jeanty[1] failed to immediately provide him with thyroid medication during that examination, and instead forced Mr. James to wait until tests confirmed his diagnosis and he obtained a follow-up appointment.

      Because there is insufficient evidence for a reasonable jury to conclude that Defendants were deliberately indifferent to a serious medical condition based on either delay in treatment, Defendants' motion for summary judgment is GRANTED.

---

[1] P.A. Jeanty's name appears as "Doctor Jeanty Francois" in the complaint, but Defendants clarify his proper name and title in the motion for summary judgment and supporting documents.

## II.     BACKGROUND[2]

Mr. James was diagnosed with hyperthyroidism, a condition where the thyroid gland is overactive, sometime between 2007 and 2009. Patrick James Deposition ("James Dep.") at 12:17–15:13, Dkt. No. 54-5. As a result, he was prescribed with daily thyroid medication and saw a doctor once or twice per year for follow-up visits. *Id.* at 16:17–20:9.

Mr. James was arrested on November 21, 2013. Defendants' Statement of Undisputed Facts, Dkt. No. 56 ("Defs.' SUF") ¶ 11. Two days later, on November 23, 2013, Mr. James was transferred to the Anna M. Kross Center ("A.M.K.C.") on Rikers Island. *Id.* ¶ 14. Late that evening and again the following day, Mr. James notified Captain Levy and Officer Brown of his thyroid condition. James Dep. at 49:17–54:9. Mr. James requested a medical appointment so that he could obtain thyroid medication, which he had stopped taking after his arrest, but Captain Levy and Officer Brown did not arrange for an immediate medical appointment. *Id.* at 20:3–9; 52:19–53:3; 54:2–9.

On November 25, 2013—less than forty-eight hours after he was transferred to A.M.K.C.—P.A. Jeanty performed an initial medical examination of Mr. James. Defs.' SUF ¶ 16. During the examination, Mr. James told P.A. Jeanty that he was taking medication for hyperthyroidism, although he could not recall the exact medication and did not report any acute medical complaints. *Id.* ¶ 17; James Dep. at 56:11–59:22. Upon examining Mr. James, P.A. Jeanty found that his thyroid gland was enlarged. Defs.' SUF ¶ 18. P.A. Jeanty ordered a thyroid profile and referred Mr. James for an ultrasound, but did not prescribe any medication at that time. *Id.* ¶¶ 19–20; James Dep. at 58:9–12; 70:3–71:8.

---

[2] Unless otherwise specified, facts are taken from Defendants' Local Rule 56.1 Statement of Undisputed Facts, Dkt. No. 56, and the evidence submitted in connection with this motion. Although Mr. James failed to oppose Defendants' motion, the Court thoroughly reviewed the evidence submitted in connection with Defendants' motion, and the Court is "satisfied that [Defendants'] citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Two days later, on November 27, 2013, the results from the thyroid profile showed that Mr. James had abnormal thyroid hormone levels. Defs.' SUF ¶ 21. An ultrasound was performed on December 3, 2013, and a radiologist subsequently concluded that the results were consistent with hyperthyroidism. *Id.* ¶¶ 22–25. P.A. Jeanty received the results of the ultrasound on December 12, 2013, and scheduled a follow-up appointment for Mr. James on December 16, 2013. *Id.* ¶ 26. The follow-up appointment was rescheduled several times due to overbooking and administrative issues, but was conducted on January 7, 2014 by P.A. Okorozo, who is not a party to this action. *Id.* ¶¶ 27–29. During his examination, P.A. Okorozo performed an electrocardiogram ("EKG"), which found that Mr. James had a faster than normal heart rate. *Id.* ¶¶ 29–31. That same day, Mr. James was transferred to Elmhurst Hospital and then to Bellevue Hospital for hyperthyroidism treatment and management. *Id.* ¶¶ 32–33.

Mr. James remained at Bellevue Hospital from January 7 until January 21, 2014. *Id.* ¶¶ 33, 35. While at Bellevue, Mr. James was prescribed Methimazole and Metoprolol to control his thyroid hormones and stabilize his heart. *Id.* ¶ 34. Although Mr. James experienced a number of hyperthyroid-related symptoms while he was without medication—including sweating, shortness of breath, lethargy, bulging eyes, sleeping problems, high heart rate, wheezing, loss of appetite, headaches, and high blood pressure—his condition quickly stabilized after receiving medication, and he returned to Rikers Island on January 21, 2014. *Id.* ¶¶ 35, 42; James Dep. at 20:16–21:15, 68:6–69:8, 72:12–20. As a result of the treatment, Mr. James's hyperthyroid condition normalized, and he has not experienced any symptoms of hyperthyroidism since January 2014. Defs.' SUF ¶¶ 45–46; James. Dep. at 97:9–17.

Mr. James filed a complaint on March 4, 2014. Dkt. No. 2. Liberally construed, the complaint alleges a claim under 42 U.S.C. § 1983 for constitutionally inadequate medical care against: (1) Captain Levy and Officer Brown for ignoring his requests for medical attention from

November 23, 2013 until he was examined by P.A. Jeanty on November 25, 2013; and (2) P.A. Jeanty for failing to prescribe thyroid medication during the initial medical examination on November 25, 2013 or after the ultrasound result was obtained on December 12, 2013.

Following the completion of discovery, Defendants filed a motion for summary judgment. Dkt. Nos. 44–45.  Mr. James failed to oppose Defendants' motion, but the Court nevertheless denied the motion without prejudice because:  (1) Defendants' Statement of Undisputed Facts failed to comply with Local Civil Rule 56.1;[3] and (2) Defendants relied on the unsworn expert report of Dr. Irwin Klein for a number of material factual contentions.[4]  *See* Dkt. Nos. 50–51.  Defendants subsequently filed a motion for summary judgment that complied with Rule 56.1 and included a sworn statement from Dr. Klein in support of the motion.  Dkt.  Nos. 53–54, 56.  Mr. James again failed to timely oppose or respond to the motion—despite the Court *sua sponte* granting him a thirty-day extension of time to do so.  Dkt. Nos. 51, 59.  Mr. James has yet to respond to the motion for summary judgment as of the date of this order, and thus the Court decides the motion without his input.

### III.     STANDARD OF REVIEW

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3] Local Civil Rule 56.1 requires a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."

[4] "[C]ourts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P 56[c], and cannot be used on a summary judgment motion without additional affidavit support." *Glowczenski v. Taser Int'l Inc.*, No. 04-cv-4052 (WDW), 2010 WL 1957289, at *2 (E.D.N.Y. May 13, 2010) (brackets, internal quotation marks and citation omitted)

moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (alterations omitted) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Nor will wholly implausible alleged facts or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (citing *Matsushita*, 475 U.S. at 585–86). The issue of fact must be genuine—Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of Plaintiff. *Id.*

Where the party opposing summary judgment is proceeding *pro se,* the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotation

5

marks omitted).  Proceeding *pro se*, however, "does not 'relieve a plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Premiere Acquisition Corp. v. Blue Jade Enterprises, Inc.*, No. 13-cv-5389 (JMF), 2015 WL 1307203, at *2 (S.D.N.Y. Mar. 23, 2015) (quoting *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir. 2003)) (brackets omitted). "Specifically, provided the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, a *pro se* party opposing summary judgment must still come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Id.* (internal quotation marks and citation omitted).

      Plaintiff did not oppose Defendants' Rule 56.1 Statement despite being provided with the appropriate "Notice to Pro Se Litigant" under Local Civil Rule 56.2.[5]  *See* Dkt. No. 58.  "[W]hen a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment.  Rather, it must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Jackson v. Fed. Express*, 766 F.3d 189, 197 (2d Cir. 2014); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

---

[5] "Local Civil Rule 56.2 requires the represented party to serve the *pro se* litigant with a form notice regarding the procedure for opposing summary judgment.  The Rule 56.2 notice generally explains the summary judgment process and warns a *pro s*e litigant that dismissal of the complaint may result in the event of a failure to respond to the motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1." *Hinds v. Chexsystem Consumer Relations*, No. 14-cv-0342 (JS) (AYS), 2015 WL 5794256, at *1 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks, brackets, and citations omitted).

**IV. ANALYSIS**

Defendants argue that the Court should grant summary judgment in their favor because no rational jury could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (brackets omitted).[6] This standard has an objective prong and a subjective prong: "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted). The Court addresses each prong separately.

**A. Legal Standard**

*1. Objective Prong*

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the Court must consider "whether the prisoner was actually deprived of adequate medical care." *Id.* Under the first inquiry, "adequate medical care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" *Martinez v. Aycock-West*, No. 12-cv-4574 (KMK), 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)).

Second, the Court must consider "whether the inadequacy in medical care is sufficiently serious." *Salahuddin,* 467 F.3d at 280. The second inquiry requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause

---

[6] Because Plaintiff is a pretrial detainee in state custody, he "receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment," rather than the Eighth Amendment, which is applicable only to convicted prisoners. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). In the Second Circuit, courts analyze deliberate indifference claims "under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72.

the prisoner." *Id.* "[G]iven the fact-specific nature of Eighth Amendment denial of medical care claims, it is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific[.]" *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) (internal quotation marks, citation, and ellipses omitted). Thus, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nonetheless, courts consider several factors in evaluating the seriousness of a medical condition, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance,* 143 F.3d at 702). "A serious medical need is generally characterized by 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Ferguson v. Cai*, No. 11-cv-6181 (PAE), 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) (quoting *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).

"[I]f the unreasonable medical care is a failure to provide *any* treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (emphasis added). But "[i]n cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Id.* Thus, where an inmate alleges "an unreasonable delay or interruption in . . . treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotation marks and brackets omitted). Because Plaintiff alleges that Defendants unreasonably delayed his treatment for hyperthyroidism, the Court focuses on "the particular risk of harm faced by [plaintiff] due to the challenged

deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186.

"[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Ferguson*, 2012 WL 2865474, at *4 (citing *Smith*, 316 F.3d at 186). "Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Id.* (collecting cases); *see also Bell*, 980 F. Supp. 2d at 560 (five-day delay in care presumed to be sufficiently serious where plaintiff alleged that he suffered serious symptoms—including vomiting while sleeping—as a result of the delay).

Where a plaintiff cannot show actual injury, he may nonetheless satisfy the objective prong by demonstrating that the delay of medical treatment exposed him to "an unreasonable risk of future harm." *Smith*, 316 F.3d at 188. However, "the inmate must show that the risk of future harm is 'so grave that it violates contemporary standards of decency.'" *Braxton v. Nichols*, No. 08-cv-8568 (PGG), 2010 WL 1010001, at *3 (S.D.N.Y. Mar. 18, 2010) (quoting *Helling v. McKinney,* 509 U.S. 25, 36 (1993)).

### 2. *Subjective Prong*

"In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). "Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280). Thus, on a motion for summary

judgment, "the question that must be answered with respect to this element is whether a reasonable jury could conclude that defendant 'knew of and disregarded an excessive risk to plaintiff's health or safety and that defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.'" *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010) (brackets omitted) (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)).

### B. Captain Levy and Officer Brown

Captain Levy and Officer Brown contend that there is no disputed issue of material fact regarding the seriousness of the alleged delay in treatment—a period of approximately 36 to 48 hours, from the time that Plaintiff arrived at A.M.K.C. and requested to see a doctor, until he was examined by P.A. Jeanty. Thus, Captain Levy and Officer Brown assert that they are entitled to summary judgment as a matter of law because Plaintiff cannot satisfy the objective prong.

In support of the motion, Defendants submitted a sworn affidavit from a medical expert, Dr. Irwin Klein, who opined that Plaintiff's condition at the time "was not a medical emergency and he was in no immediate medical danger." Dr. Irwin Klein Affirmation ("Klein Aff.") ¶ 7, Dkt. No. 54-14. Moreover, Dr. Klein found that the treatment and medication that Plaintiff received at Bellevue Hospital in January 2014—commenced after Plaintiff had been without thyroid medication for approximately six weeks—led to a "complete correction and normalization of [Plaintiff's] thyroid condition." Klein Aff. ¶ 20. Thus, Defendants have set forth evidence that any alleged lapse in treatment was minor, and not sufficiently serious to raise a constitutional claim.

There is no evidence in the record supporting the seriousness of Plaintiff's medical needs based on the short delay in treatment. Plaintiff has not put forward any evidence to rebut Dr. Klein's opinion that Plaintiff's hyperthyroidism was not a medical emergency. Moreover, Plaintiff's complete recovery after six weeks without thyroid medication strongly undermines the alleged

seriousness of a 36-to-48 hour delay in receiving a medical examination. *See Smith*, 316 F.3d at 187 ("[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."). Nor has Plaintiff put forth any evidence demonstrating that the delay put him at an "unreasonable risk of future harm." *Id.* at 188.

Although Plaintiff asserts that he experienced sweating, shortness of breath, and trouble sleeping prior to being examined by P.A. Jeanty, *see* James Dep. at 55:5–56:3, courts in this district have found that claims based on similar symptoms over a short period of time are insufficient to give rise to a serious medical condition that would produce death, degeneration, or extreme pain. *See, e.g.*, *Sauls v. N.Y.C. Dep't. of Correction*, No. 02-cv-5904 (TPG), 2004 WL 691374, at *4 (S.D.N.Y. Mar. 31, 2004) ("'[V]iolent nightmares, cold sweats, insomnia, and a total loss of appetite.' . . . cannot without more constitute the kind of 'substantial risk of serious harm' required to make out an Eighth Amendment violation."); *Davidson v. Scully*, 155 F. Supp. 2d 77, 86 (S.D.N.Y. 2001) ("headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, nasal infections, and breathing problems" do not constitute serious medical conditions because they "do not produce death, degeneration, or extreme pain"); *Byas v. New York*, No. 99-cv-1673(NRB), 2001 WL 1579552, at *3 (S.D.N.Y. Dec. 11, 2001) (allegations of difficulty breathing because of tubes blocking plaintiff's nose, the infirmary being hot and stuffy, and plaintiff suffering from asthma did not demonstrate serious medical needs); *Maurice v. N.Y.C. Dep't. of Corrections*, No. 93-cv-6008 (JFK), 1997 WL 431078, at *1, 3 (S.D.N.Y. July 30, 1997) (stomach cramps, sweating, and diarrhea for one day was not a serious medical need); *see also Ferguson*, 2012 WL 2865474, at *4 (plaintiff failed to satisfy objective prong based on one-day delay in receiving insulin, which caused temporary blindness, pain, and swelling in leg).

Because there is insufficient evidence supporting the seriousness of Plaintiff's medical condition, based on the 36 to 48 hours that he had to wait before receiving a medical examination, Plaintiff fails to satisfy objective prong of the deliberate indifference standard. Accordingly, Defendants' motion for summary judgment is GRANTED as to Captain Levy and Officer Brown.

### C. P.A. Jeanty

P.A. Jeanty similarly contends that there is no disputed material facts regarding the objective seriousness of the six-week delay that Plaintiff was without thyroid medication. In support of the motion, P.A. Jeanty also relies primarily on Dr. Klein's conclusions. Dr. Klein opined that: P.A. Jeanty offered "completely appropriate and proper" treatment, Klein Aff. ¶ 8; "there was no delay in [Plaintiff] receiving treatment for hyperthyroidism" because "hyperthyroidism is not a medical emergency," *id.* ¶ 19; and the medication that Plaintiff received led to a "complete correction and normalization of [Plaintiff's] thyroid condition," *id.* ¶ 20. Thus, P.A. Jeanty argues that Plaintiff cannot meet the objective prong for deliberate indifference.

There is little evidence in the record supporting Plaintiff's contention that the delay in receiving medication was a sufficiently serious medical issue, and Plaintiff fails to refute Dr. Klein's conclusions. *See Urena v. Beaudouin*, No. 09-cv-01107 (KAM) (LB), 2014 WL 4659289, at *6–7 (E.D.N.Y. Sept. 16, 2014) (plaintiff failed to satisfy objective standard where he "does not refute the conclusions in [defendant's expert] report" and "the uncontroverted record establishes that plaintiff received adequate medical care"). Nevertheless, the Court need not—and expressly does not—make any finding regarding the seriousness of the delay. Instead, as discussed below, the Court finds that there is insufficient evidence for a reasonable jury to conclude that P.A. Jeanty acted with the requisite mental state under the subjective prong.

There is no evidence in the record suggesting that P.A. Jeanty was aware of—and disregarded—a substantial risk that serious harm would result from his actions. After P.A. Jeanty

was notified of Plaintiff's thyroid condition during the initial medical examination, he ordered a thyroid profile and an ultrasound. Defendants' expert maintains that such a course of action was appropriate, explaining that "[i]t would *not* have been appropriate for P.A. Jeanty to prescribe thyroid medication . . . without first obtaining appropriate thyroid function tests." Dr. Klein Aff. ¶ 8 (emphasis added). Although Plaintiff asserts that he should have been provided with medication before P.A. Jeanty performed additional tests and confirmed the hyperthyroidism diagnosis, "[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311–12 (S.D.N.Y. 2001) (citing *Chance*, 143 F.3d at 703 (2d Cir. 1998)); *see also Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) ("[T]he fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim[.]").

There was a seemingly long delay of nearly one month between P.A. Jeanty receiving the ultrasound results and Plaintiff being prescribed thyroid medication. During that time, Plaintiff's appointment was rescheduled on several occasions due to overbooking and administrative issues. There is, however, no evidence suggesting that P.A. Jeanty contributed to or was aware of the delay. Dr. Klein opined that the overall timeframe for treatment "falls within the standard of care" because Plaintiff's condition was "not a medical emergency," and that such a delay would be commonplace even in private medical practice. Dr. Klein Aff. ¶ 19. But even if that were not so, and the delay rose to the level of negligence, Plaintiff's claim nevertheless must fail as a matter of law. "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703.

Because there is no evidence that P.A. Jeanty acted with a mental state approaching subjective recklessness, Defendants' motion for summary judgment is GRANTED as to P.A. Jeanty.

## V. CONCLUSION

For the reasons outlined above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 53, and to close this case.

SO ORDERED.

Dated: July 19, 2016
New York, New York

GREGORY H. WOODS
United States District Judge